## IN THE MATTER OF SAMUEL GREENSTONE, AN ATTORNEY-AT-LAW.

Argued November 9, 1923—Decided ·February 19, 1924.

**Attorneys-at-Law—Suspension from Practice—Dispute Between Attorney and Client Regarding Amount of Fees Contingent Upon Amount of Recovery—Evidence not Convincing Beyond Reasonable Doubt of Attorney's Guilt.**

Before Justices KALISCH and KATZENBACH.

For the prosecutor, *Mark Townsend, Jr.*

For the respondent, *Thomas G. Haight, Wilbur H. Heisley* and *John A. Hartpence.*

PER CURIAM.

Samuel Greenstone was admitted to the bar of this state at the June term, 1909, of the Supreme Court. In the fall of 1922, William B. McMichael, a referee of the Workmen's Compensation Bureau, referred to the ethics committee of the Hudson County Bar Association, a complaint made by one·Stanley Kopaz, against Mr. Greenstone. The complaint was two-fold. It charged that Mr. Greenstone made a contract to represent Kopaz in a claim for personal injuries against the· Central Railroad Company of New Jersey for· thirty-three and one-third per cent. of the amount claimed; that Mr. Greenstone collected $2,500 and then retained $1,250, or fifty per cent. of the amount collected for his services. It also charged that out of the fifty per cent. which Mr. Greenstone gave to Kopaz, which was in the form of a check for $1,250, which Kopaz endorsed and which was then cashed by Mr. Greenstone at the bank upon which it was drawn, $250 was taken by Mr. Greenstone, so that out of the case Mr. Greenstone obtained $1,500 and Kopaz $1,000.

The complaint was investigated by a committee of the Hudson County Bar Association, but no report thereon was

made. The chairman of the committee laid the matter before a justice of this court, who directed that the complaint be investigated by the bar examiners. The bar examiners investigated the complaint, took testimony, and rendered a report that Mr. Greenstone had been guilty of unprofessional conduct and recommended that he be suspended for two years.

The question now presented is whether or not the report of the bar examiners shall be confirmed.

Of the two charges mentioned above the examiners found that the second charge was not supported by the testimony and should be dismissed. The first charge with reference to the amount Mr. Greenstone's fee was to be, the board of examiners found was sustained by the testimony. It is upon this charge that the suspension of Mr. Greenstone is recommended.

Kopaz was an employe of the Central Railroad Company. On February 9th, 1922, he was injured while at work at Elizabethport. His injury was caused by being struck by an engine. He was taken to the Elizabeth General Hospital, where he remained until February 27th, 1922. He then returned three days a week to the dispensary of that hospital to have his wounds bandaged. While at the hospital one Frank Warwick, a stranger to him, but an agent to Mr. Greenstone, recommended to Kopaz that he engage Mr. Greenstone for his lawyer. Kopaz had already gone to Mr. Samuel Hollander, a Newark lawyer, and had signed an agreement by which Mr. Hollander was to receive one-half of any sum recovered. Kopaz never returned to Mr. Hollander's office. He then engaged Mr. Greenstone. Mr. Greenstone says that there was no written contract between Kopaz and himself, but that the oral contract between them was that there was to be an equal division of the amount received and out of his share he was to pay all the expenses. This agreement, Mr. Greenstone says, was made at the first interview and was contingent upon the case coming within the Federal Workmen's Liability act. Mr. Greenstone also says that when Kopaz first came to him he was in doubt as to whether Kopaz's case would be under the New Jersey

Workmen's Compensation act or under the Federal Employers' Liability act. If the former, no contract for services could be made, as the court would fixe the fee. If the latter, then it was a proper subject-matter for an agreement for a contingent fee.

Mr. Greenstone then interviewed some of the workmen and had an investigation of the accident made by Warwick. He concluded that the case of Kopaz was within the Federal Employers' Liability act. Mr. Greenstone says that there was at no time an agreement in writing made with reference to the fee; that Kopaz signed an original and duplicate petition for compensation under the New Jersey Workmen's Compensation act at the time he first came to his office.

Mr. Greenstone sent Kopaz to a Dr. Kline for treatment, and Dr. Kline charged $300, which Mr. Greenstone paid. Kopaz says that the agreement was two-thirds for him and for him to pay the expenses. Mr. Greenstone says that the agreement was one-half to each and that he, Greenstone, was to pay the expenses. The difference betwen the two versions of the contract amounts to $51.66.

The case seems to us to be one of a dispute between an attorney and client. We are not particularly impressed with the testimony of Kopaz. He first made an agreement with Mr. Hollander for an equal division of the amount recovered. His explanation is that when he learned the nature of the agreement which he had signed he told Mr. Hollander "there was nothing doing." Mr. Hollander, however, testified that Kopaz said nothing to him to this effect and that he wrote to the Central Railroad Company and received a letter from them stating that they had settled the claim through Mr. Greenstone. Mr. Hollander is a reputable member of the bar. His testimony contradicts that of Kopaz.

The board of bar examiners was unwilling to accept the testimony of Kopaz to the effect that Mr. Greenstone abstracted $250 from the $1,250 paid him as his share. If the testimony of Kopaz was not deemed credible in this matter, can it be given credit as to the division of the amount recovered?

Kopaz also testified that he had not been to the Foreign Language Bureau in New York prior to having received the money from Mr. Greenstone. There is evidence that in April, 1922, Kopaz had gone to the Foreign Language Bureau and stated his case, and asked that the bureau find out the status of his case.

It is said that Kopaz is ignorant. He could not be so ignorant as not to know that he had gone to this bureau prior to the receipt of the money from Mr. Greenstone.

At the time that Kopaz was in the office of Greenstone there was present a man by the name of Bedner. Bedner testified that he heard the agreement between Kopaz and Greenstone and that it was a fifty-fifty agreement. Kopaz later went to Bedner and offered him $100 if he would go to the Workmen's Compensation Bureau and sign a statement that Mr. Greenstone was to charge Kopaz only one-third.

Kopaz also testified that he had not written on a book belonging to Bedner the words "571 Jersey avenue." He was then asked to write "571 Jersey avenue," which he did. This writing is a part of the exhibits in the case. We have compared them and are of the opinion that Kopaz did write the words "571 Jersey avenue" on the book of Bedner. This tends to corroborate Bedner's testimony and to discredit Kopaz.

Upon a review of the entire case we have reached the conclusion that the evidence is not so clear and convincing as to satisfy us beyond a reasonable doubt of the guilt of Mr. Greenstone. We will decline to affirm the report and recommendation of the bar examiners and order that the rule be discharged.